UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

|  |  |
|---|---|
| IN RE | CHAPTER 7 |
| MARIA LEONE AND PHILIP LEONE | CASE NO. 1-17-41358-nhl |
|  | JUDGE: Nancy Hershey Lord |
| DEBTORS | MOTION DATE: JUNE 4, 2020 |
|  | MOTION TIME: 3:00 PM |

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Shari S. Barak, a member of the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Select Portfolio Servicing, Inc. ("Movant") will move this Court as set forth below:

JUDGE:                         HON.  Nancy Hershey Lord

RETURN DATE & TIME:   June 4, 2020 at 3:00 PM

COURTHOUSE:             United States Bankruptcy Court
                        271 Cadman Plaza East
                        Brooklyn, NY 11201

RELIEF REQUESTED:    The proposed order will seek to vacate the automatic stay imposed by 11 U.S.C. § 362(a) generally described as 40 Tanglewood Drive, Staten Island, NY 10308, pursuant to 11 U.S.C. § 362(d)(1) based upon the total debt due to Movant, resulting in Movant's lack of adequate protection with regard to the subject property.

19-083224

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by Shapiro, DiCaro & Barak, LLC at their offices at One Huntington Quadrangle, Suite 3N05, Melville, NY 11747 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York at United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, NY 11201 no later than seven (7) days prior to the return date of this motion.

Dated:    <u>  April 3, 2020          </u>, 2020
             Melville, New York

<u>  /s/Shari Barak                                        </u>
Shari S. Barak
Managing Attorney
Shapiro, DiCaro & Barak, LLC
Attorneys for Select Portfolio Servicing, Inc.
One Huntington Quadrangle, Suite 3N05
Melville, NY  11747
Telephone: (631) 844-9611
Fax: (631) 844-9525

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:    SERVICE LIST

19-083224

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| MARIA LEONE AND PHILIP LEONE | CASE NO. 1-17-41358-nhl |
| | JUDGE: Nancy Hershey Lord |
| DEBTORS | MOTION DATE: JUNE 4, 2020 |
| | MOTION TIME: 3:00 PM |

**AFFIRMATION IN SUPPORT OF
ENTRY OF AN ORDER GRANTING
RELIEF FROM THE AUTOMATIC STAY**

Shari S. Barak, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

1.  I am a member with the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Select Portfolio Servicing, Inc. ("Movant"), a secured creditor of Maria Leone and Philip Leone ("Debtors").  As such, I am fully familiar with the facts and circumstances of this case.

2.  I make this Affirmation in support of the within request for an Order Granting Relief from the automatic stay, for cause, pursuant to 11 U.S.C. § 362(d)(1) and (2).

3.  Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.  Movant is a Secured Creditor of Debtor pursuant to a Consolidation Extension Modification Agreement ("Consolidation Agreement") executed by Philip S. Leone and Maria G. Leone on April 10, 2003, whereby Philip S. Leone and Maria G. Leone promised to repay the

19-083224

principal amount of $208,100.00 plus interest to HSBC Mortgage Corporation (USA) (the "Consolidated Note"). To secure the repayment of the Consolidated Note, Philip S. Leone and Maria G. Leone granted HSBC Mortgage Corporation (USA) a mortgage, which was duly recorded as part of the Consolidation Agreement in the Richmond County Office of the City Register on July 17, 2003 in Reel 15459, 229 (the "Consolidated Mortgage", the Consolidation Agreement, Consolidated Note and Consolidated Mortgage, collectively, as the "Loan"), encumbering real property located at 40 Tanglewood Drive, Staten Island, NY 10308 (the "Property"). The Mortgage was transferred from HSBC Mortgage Corporation (USA) to Nationstar Mortgage LLC, and said transfer was memorialized by an Assignment of Mortgage executed on January 13, 2017 and recorded February 6, 2017 in Land Doc # 639746 (the "Assignment of Mortgage"). The Mortgage was subsequently transferred to Select Portfolio Servicing, Inc., and said transfer was memorialized by an Assignment of Mortgage executed on August 28, 2019 and recorded September 12, 2019 in Land Doc # 751710 (the "Assignment of Mortgage"). The terms of the Loan were modified by agreement dated March 20, 2010 entered into by and between the HSBC Mortgage Corporation (USA), Philip S. Leone, Maria G. Leone and Santo Agosta (non-filing "Co-Borrower") creating a new principal balance in the amount of $221,865.10 (the "Loan Modification Agreement"). A copy of the Consolidation Agreement, including the Consolidated Note and Consolidated Mortgage, Loan Modification Agreement and Assignments of Mortgage are annexed hereto as **Exhibit "A"**.

5. Upon information and belief, the Debtors herein own(s) the Property.

6. Debtors filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code on or about March 23, 2017.

7.   Debtors have failed to make mortgage payments due to Movant under the terms of the Loan.   As a result, the Mortgage remains due for the December 1, 2019 payment and each subsequent payment thereafter.

8.   The amount of delinquency due as of January 13, 2020 under the Mortgage is as follows:

| | |
|---|---|
| 2 Defaulted Monthly Payments at $1,205.16 each (December 2019 through January 2020) | $2,410.32 |
| Property Preservation | $75.00 |
| Suspense | $(793.37) |
| Total Delinquencies | $1,691.95 |

9.   A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is annexed hereto as **Exhibit "B"**. Since the drafting of the Motion the February 1, 2020 payment has become due.

10. Moreover, in view of the total debt due to Movant and in light of the Debtor's failure to make payments, Movant is no longer adequately protected.  The automatic stay must be vacated for cause pursuant to 11 U.S.C. § 362(d)(1).

11. As set forth in the Affidavit, as of January 13, 2020, the approximate debt due and owing to Movant equals $216,430.76.  The debt is accruing interest at a rate of 4.625% per annum.

12. Based upon the Debtors' Schedule A/B, the Property has an estimated fair value of approximately $465,767.00.  A copy of Debtors' Schedule A/B is annexed hereto as **Exhibit "C"**. As indicated in paragraph 11 herein above, the total debt to Movant equals $216,430.76.

13. Movant, according to the laws of the State of New York and the terms and conditions of the Mortgage, desires to continue and/or commence foreclosure proceedings with respect to the Property.

14. The Debtors, Co-Borrower, Debtors' Attorney, the Chapter 7 Trustee, the Office of the United States Trustee and all creditors that have filed a notice of appearance have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

15. No prior application has been made for the relief requested herein.

16. The entity which has the right to foreclose is: Select Portfolio Servicing, Inc. by virtue of being the holder and owner of the note.

**WHEREFORE,** Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) as to the aforementioned Property; allowing Movant, its agents, assigns or successors in interest, leave to exercise its rights pursuant to the Note and Mortgage including but not limited to foreclose the Mortgage secured by the subject Property; and for such other, further and different relief as to this Court may seem just, proper and equitable.

Dated: _____April 3_____, 2020
        Melville, New York

                                    /s/Shari Barak
                                    _____
                                    Shari S. Barak
                                    Managing Attorney
                                    Shapiro, DiCaro & Barak, LLC
                                    Attorneys for Select Portfolio Servicing, Inc.
                                    One Huntington Quadrangle, Suite 3N05
                                    Melville, NY  11747
                                    Telephone: (631) 844-9611
                                    Fax: (631) 844-9525

19-083224

**SHAPIRO, DICARO & BARAK, LLC**
Attorneys for Select Portfolio Servicing, Inc.
One Huntington Quadrangle, Suite 3N05
Melville, NY  11747
Telephone: (631) 844-9611, Fax: (631) 844-9525
**Shari S. Barak**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| MARIA LEONE AND PHILIP LEONE | CASE NO. 1-17-41358-nhl |
| DEBTORS | JUDGE: Nancy Hershey Lord |
| | MOTION DATE: JUNE 4, 2020 |
| | MOTION TIME: 3:00 PM |

## <u>CERTIFICATE OF SERVICE BY MAIL</u>

STATE OF NEW YORK    )
                          )ss:
COUNTY OF MONROE    )

       I, Michael Chatwin, being sworn, say, I am not a party to this action; I am over 18 years of

age, I reside in Rochester, New York.

       On   April 3  , 2020 I served the within Notice of Motion, Affirmation in Support,

Exhibits and Proposed Order Granting Relief from the Automatic Stay upon:

   TO:    Debtors
         Maria Leone
         40 Tanglewood Drive
         Staten Island, NY 10308

         Philip Leone
         40 Tanglewood Drive
         Staten Island, NY 10308

19-083224

Co-Borrower
Santo Agosta
40 Tanglewood Drive
Staten Island, NY 10308


Attorney for Debtor
Benjamin C. Rosenberg
859 Crestview Avenue
Valley Stream, NY 11581

Trustee
Debra Kramer
Debra Kramer, PLLC
98 Cutter Mill Road
Suite 466 South
Great Neck, NY 11021

U.S. Trustee - Brooklyn
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014


at the addresses designated by the foregoing individuals for that purpose by depositing a true copy

of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the

exclusive care and custody of the United States Postal Service within the State of New York.



Date ___4/3/2020_____                        ___/s/ Michael Chatwin_____
                                               Michael Chatwin
                                               Bankruptcy Attorney
                                               Shapiro, DiCaro & Barak, LLC
                                               Attorneys for Select Portfolio Servicing, Inc.
                                               175 Mile Crossing Boulevard
                                               Rochester, New York 14624
                                               Telephone: (585) 247-9000
                                               Fax: (585) 247-7380

19-083224

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

|  |  |
|---|---|
| IN RE | CHAPTER 7 |
| MARIA LEONE AND PHILIP LEONE | CASE NO. 1-17-41358-nhl |
|  | JUDGE: Nancy Hershey Lord |
| DEBTORS | MOTION DATE: JUNE 4, 2020 |
|  | MOTION TIME: 3:00 PM |

### ORDER GRANTING RELIEF FROM
### THE AUTOMATIC STAY

**UPON** consideration of the Application of Select Portfolio Servicing, Inc., ("Movant")
dated April 3, 2020, and it appearing that neither the Debtors nor the Chapter 7 Trustee nor the
U.S. Trustee have opposition to the motion brought by Movant, for relief from the automatic
stay, and with good cause appearing therefore, it is

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. § 362(a),
is hereby vacated for cause pursuant to 11 U.S.C. § 362(d) as to Movant, its agents, assigns or
successors in interest, so that Movant, its agents, assigns or successors in interest, may take any
and all actions pursuant to the Note and Mortgage and applicable state law including but not
limited to foreclose its mortgage on premises known as 40 Tanglewood Drive, Staten Island, NY
10308 without further application to this Court, and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the
U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

19-083224

**ORDERED** that the Movant shall promptly report and turn over to the Chapter 7 Trustee any surplus monies realized by any sale of the Property.

Exhibit "A"

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension and Modification Agreement dated the same date as this Note.

# NOTE

April 10, 2003                            Brooklyn                            NEW YORK
[Date]                                    [City]                              [State]

40  TANGLEWOOD DRIVE, STATEN ISLAND, NY  10308

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $208,100.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          5.6250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on June 01, 2003          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01, 2033          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY  14043

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,197.94          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(NY) (0005)                    Form 3233 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        **2.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



-5N(NY) (0005)

Form 3233 1/01

Initials:

## 5. ·LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        2.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Form 3233 1/01

Initials: ___

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PHILIP S. LEONE                  -Borrower

_____ (Seal)
MARIA G. LEONE                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Pay to the order of, without recourse
_____

HSBC MORTGAGE CORPORATION (USA)                    [Sign Original Only]

By: _____
    Kathleen M. Mueller, Vice President

RICHMOND COUNTY CLERK
RECORDING and ENDORSEMENT PAGE
COUNTY OF RICHMOND
This page forms part of the instrument

Total Number of pages in document
INCLUDING this page> *32*

Premises *40 TANGLEWOOD DR* RECORD &    Name *CHARLES D. MIELE, ESP.*
*STATEN ISLAND, NY* RETURN TO:    Address *425 74TH STREET*
    City/State/Zip *Brooklyn, NY 11209*

Title/Agent Company Name
*INTRACOASTAL ABSTRACT*

BLOCKING SECTION

Block *4683*
Title Company File Number. ▓▓▓▓▓▓▓▓    Lots(s) *255*    Partial Lot(s)_____

Describe Document(s) *Consolidation*

Name &    Party 1 *PHILIP S. LEONE & MARIA G. LEONE*
Address    Party 2 *HSBC Mortgage Corp.*

COUNTY CLERK'S USE ONLY...Do Not Write Below This Line
==========================================================

Examined By:_____ Date *7/16/03*    Blocked:_____
    By:_____ Date_____

Mtge. Amount    $_____
Mtg. Tax Collected    $_____

Exemption                    Verified By:
Yes /\ No___    a. Address___ b. Tax Map ___
If yo...    c.Legal Descr.__ d. Blk/lot___
Type: [253] [255] Other_____    ..................................................
    Dwelling Type:    [1to3] [4to6] [over 6]
Recording Fee $_____         [Vacant/Commercial]

Affidavit Fee    $_____    **RECORDED IN RICHMOND COUNTY**
Consideration    $_____
Lien deduction    $_____    JUL 17 2003
RPT Tax    $_____

RETT Tax    $_____
    COUNTY CLERK

Recording Fees: *32*
a. Page Count_____ b. Extra Block(s)_____
c. Extra Lot(s)_____ d. Extra Mortgage Cited_____

RICHMOND
COUNTY CLERK
RECEIVED

2003 MAY 16  A 10:11

DOCUMENT # 56664
RECEIPT#
RECEIPT#/2003 11:30:56 A.M.
39408
FEE: $102.00
RICHMOND COUNTY CLERK

REEL 1549 PAGE 229

Return To:

CHARLES D. MIELE, ESQ.
425 74TH STREET, BROOKLYN, NY
11209

Prepared By:
PAWLAKYOUNG, T, ,

——————————— [Space Above This Line For Recording Data] ———————————

## CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**

 (A) **"Agreement."** This document, which is dated April 10, 2003                     and exhibits and riders attached to this document will be called the "Agreement."

 (B) **"Borrower."** PHILIP S. LEONE AND MARIA G. LEONE

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 40   TANGLEWOOD DRIVE, STATEN ISLAND, NY  10308

 (C) **"Lender."** HSBC Mortgage Corporation (USA)

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of DELAWARE                     . Lender's address is 2929 WALDEN AVENUE, DEPEW, NY  14043-2602

 (D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

 (E) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

 (F) **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3172  1/01
(rev. 5/01)

VMP ®-850R(NY) (0107).01
Page 1 of 6          Initials:
VMP MORTGAGE FORMS - (800)521-7291

(G) "Property."    The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

40    TANGLEWOOD DRIVE
[Street]

STATEN ISLAND                     ,                     KINGS                     ,
[City]                                                   [County]

New York , 10308
[State and Zip Code]

I promise and I agree with Lender as follows:

## I.    BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower.  That means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me.  The total unpaid principal balance of the Notes is U.S. $ 208,100.00                     of this amount, U.S. $ 42,458.08                     was advanced to me (or for my account) immediately prior to this consolidation.

## II.    AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified or extended rights and obligations under any of the Notes and Mortgages.  This means that all of Lender's rights in the Property are combined so that under that law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  This combining of notes and mortgages is known as a "Consolidation."

(B)  In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A.  This means that all of the Lender's rights in the Property have already been combined so that under that law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  The combining of notes and mortgages is known as a "Consolidation."

## III.    AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C.  The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder.  I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note.  The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

## IV.    AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D.  The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property.  I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

Initials

**(G) "Property."**    The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

<div align="center">

40    TANGLEWOOD DRIVE
[Street]

</div>

STATEN ISLAND                             ,                    KINGS                    ,
[City]                                                              [County]

New York , 10308
[State and Zip Code]

I promise and I agree with Lender as follows:

## I.    BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower.  That means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me.  The total unpaid principal balance of the Notes is U.S. $  208,100.00                            of this amount, U.S. $ 42,458.08                        was advanced to me (or for my account) immediately prior to this consolidation.

## II.    AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified or extended rights and obligations under any of the Notes and Mortgages.  This means that all of Lender's rights in the Property are combined so that under that law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  This combining of notes and mortgages is known as a "Consolidation."

(B)  In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under that law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  The combining of notes and mortgages is known as a "Consolidation."

## III.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

## IV.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will  constitute in law a single lien upon the Property.  I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

Initials-

**V.  NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI.  BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner of the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII.  WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX.  LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X.  TYPE OF PROPERTY**

Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

Initials: _____

By signing this Agreement, Lender and I agree to all of the above.

HSBC Mortgage Corporation (USA)
                     - Lender       PHILIP S. LEONE             - Borrower

By: _____      _____
Sandra M. Yax                  MARIA G. LEONE            - Borrower
Team Leader, AVP

_____      _____
                      - Borrower                        - Borrower

_____      _____
                      - Borrower                        - Borrower

_____      _____
                      - Borrower                        - Borrower

**STATE OF NEW YORK,**                    Erie          County ss:

    On the    10th    day of      April, 2003       before me, the undersigned, a notary public in and for said state, personally appeared Sandra M. Yax

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public   RITA M. BROWN  No. 01BR6001747
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Jan. 20, 2005

Tax Map Information:

By signing this Agreement, Lender and I agree to all of the above.

HSBC Mortgage Corporation (USA)
_____ - Lender    _____ - Borrower
                                                    PHILIP S. LEONE

By _____              _____ - Borrower
    Sandra M. Yax                                   MARIA G. LEONE
    Team Leader, AVP

_____ - Borrower   _____ - Borrower

_____ - Borrower   _____ - Borrower

_____ - Borrower   _____ - Borrower


**STATE OF NEW YORK,**                 Erie            County ss:


On the    10th    day of        April, 2003         before me, the undersigned, a notary
public in and for said state, personally appeared Sandra M. Yax


personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public RITA M. BROWN  No. 01BR6001747
                Notary Public, State of New York
                  Qualified in Erie County
Tax Map Information:         My Commission Expires Jan. 20, 2005

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

[X] (1) This Mortgage given by PHILIP S. LEONE and MARIA G. LEONE

and dated 04/10/2003                    in favor of HSBC Mortgage Corporation (USA)

securing the original principal amount of U.S. $42,458.08
This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and
[X] will be recorded together with this Agreement.
[ ] ~~was recorded on~~                                    ~~x in the Office of the Clerk of~~
~~KINGS~~                                                  ~~County, State of New York, in~~
~~Liber~~                        ~~xx Page~~
[X] At this date, the unpaid principal balance secured by this Mortgage is U.S. $ 42,458.08
This Mortgage secures a Note dated      04/10/2003

[X] (2) This Mortgage given by PHILIP S. LEONE, MARIA G. LEONE and SANTO AGOSTA

and dated 10/13/1995                    in favor of Mid-Island Equities Corp.

securing the original principal amount of U.S. $144,000.00
This Mortgage was recorded on 11/14/1995                    in the Office of the Clerk of
KINGS                                County, State of New York, in ~~Liber 6322~~  Reel 6322
at Page 220
[ ] ~~At this date, the unpaid principal balance secured by this Mortgage is U.S.~~
~~$x.xx~~.                         .This Mortgage secures a Note dated      10/13/1995
Said Mortgage was assigned to Mid-Island Mortgage Corp. by assignment agreement dated
10/13/95 recorded 01/25/02 in liber 12106 page 174.

[X] (3) This Mortgage given by PHILIP S. LEONE and MARIA G. LEONE

and dated 10/17/2001                    in favor of Mid-Island Mortgage Corp.

securing the original principal amount of U.S. $32,043.75
This Mortgage was recorded on 11/25/2002                    in the Office of the Clerk of
KINGS                                County, State of New York, in ~~Liber 12106~~  Reel 12106
at Page 126
[ ] ~~At this date, the unpaid principal balance secured by this Mortgage is U.S.~~
~~$x.xx~~.                         . This Mortgage secures a Note dated 10/17/2001
Said Mortgages 2 & 3 were consolidated to form a single lien in the amount of
$168,000.00
by consolidation agreement dated 10/17/01 recorded 01/25/02 in liber 12106 page 145.
Said Mortgage is hereby assigned to HSBC Mortgage Corporation (USA) by assignment
dated 4/10/03 and recorded together with this agreement. At this date, the unpaid
principal balance secured by these Mortgages as Consolidated is $165,641.92

**STATE OF NEW YORK,**                    Kings                County ss:

On the   10th    day of   April, 2003                        before me, the undersigned, a notary
public in and for said state, personally appeared  PHILIP S. LEONE  and  MARIA G. LEONE
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person
upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

**STATE OF NEW YORK,**                    Kings                County ss:

On the    10th      day of   April, 2003                    before me, the undersigned, a notary public in and for said state, personally appeared  PHILIP S. LEONE  and  MARIA G. LEONE personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

**EXHIBIT A**

☐ (4) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $ 0.00
This Mortgage was recorded on                                        in the Office of the Clerk of
KINGS                                        County, State of New York, in Liber
at Page
☐ At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                        . This Mortgage secures a Note dated

☐ (5) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $ 0.00                                        . This
Mortgage was recorded on                                        in the Office of the Clerk of
KINGS                                        County, State of New York, in Liber
at Page
☐ At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                        . This Mortgage secures a Note dated

☐ (6) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $ 0.00                                        . This
Mortgage was recorded on                                        in the Office of the Clerk of
KINGS                                        County, State of New York, in Liber
at Page
☐ At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                        . This Mortgage secures a Note dated

**INSTRUCTIONS**

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)   All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2)   The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)   The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

**CONSOLIDATED NOTE**

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

**CONSOLIDATED ADJUSTABLE RATE NOTE**

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)   The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)   For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)   If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

-850R(NY) (0107).01                                                      Form 3172  1/01 (rev. 5/01)

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)     All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

       If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2)     The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)     The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

       The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)     The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)     For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)     If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

EXHIBIT B

# S C H E D U L E   A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Richmond, City and State of New York, bounded and described as follows:

BEGINNING  at a point on the southwesterly side of Tanglewood Drive (64 feet wide) distant 200.00 feet easterly from the corner formed by the intersection of the southwesterly side of Tanglewood Drive and the easterly side of Arthur Kill Road;

RUNNING THENCE south 42 degrees 17 minutes 29 seconds west 100.00 feet to a point;

THENCE south 47 degrees 42 minutes 31 seconds east 25.00 feet to a point;

THENCE north 42 degrees 17 minutes 20 seconds east and part of the distance through a party wall, 100 feet to the said southwesterly side of Tanglewood Drive; and

THENCE along the said southwesterly side of Tanglewood Drive north 47 degrees 42 minutes 31 seconds west 25.00 feet to the point or place of BEGINNING.

## "EXHIBIT C"

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension and Modification Agreement dated the same date as this Note.

# NOTE

April 10, 2003                         Brooklyn                         NEW YORK
[Date]                                    [City]                              [State]

40  TANGLEWOOD DRIVE, STATEN ISLAND, NY  10308
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 208,100.00          (This amount is called "Principal"), plus interest, to the order of the Lender. The Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.6250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st     day of each month beginning on June 01, 2003          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01, 2033          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY  14043
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,197.94.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of PrIncipal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family/Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3233  1/01

Initials: _____

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                     2.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



-5N(NY) (0005)                                    Page 2 of 3

Form 3233 1/01
Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.


-5N(NY) (0005)

Form 3233 1/01

Initials:

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PHILIP S. LEONE                          -Borrower

_____ (Seal)
MARIA G. LEONE                           -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

*[Sign Original Only]*



"EXHIBIT D"

Return To:
CHARLES D. MIELE, ESQ.

425 74TH STREET,
BROOKLYN, NY  11209

Prepared By:
PAWLAKYOUNG, T, ,

———————————[Space Above This Line For Recording Data]———————————

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."**  This document, which is dated April 10, 2003
together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."** PHILIP S. LEONE AND MARIA G. LEONE

whose address is 40  TANGLEWOOD DRIVE, STATEN ISLAND, NY  10308
sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "Lender."**  HSBC Mortgage Corporation (USA)

will be called the "Lender."  Lender is a corporation or association which exists under the laws of
DELAWARE                                   . Lender'a address is  2929 WALDEN AVENUE, DEPEW,
NY  14043-2602

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3033 1/01

Page 1 of 17                                          Initials:

**(D) "Note."** The note signed by Borrower and dated April 10, 2003                    , will be called the "Note." The Note shows that I owe Lender TWO HUNDRED EIGHT THOUSAND ONE HUNDRED and NO/100

Dollars (U.S. $208,100.00                    ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by May 01, 2033

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider
- ☐ Condominium Rider
- ☐ Second Home Rider
- ☐ Balloon Rider
- ☐ Planned Unit Development Rider
- ☐ 1-4 Family Rider
- ☐ VA Rider
- ☐ Biweekly Payment Rider
- ☐ Other(s) [specify]

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _____

**(D) "Note."** The note signed by Borrower and dated April 10, 2003 , will be called the "Note." The Note shows that I owe Lender TWO HUNDRED EIGHT THOUSAND ONE HUNDRED and NO/100

Dollars (U.S. $208,100.00 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by May 01, 2033

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 40    TANGLEWOOD DRIVE

[Street]

STATEN ISLAND                    [City, Town or Village]  , New York 10308       [Zip Code].

This Property is in KINGS                                County. It has the following legal

description: SEE SCHEDULE A ATTACHED HERETO

THIS PROPERTY IS IMPROVED BY A ONE OR TWO FAMILY DWELLING

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Initials: _____

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language.".

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.



Initials:

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language.".

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.   .

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.



If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: _____

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Initials: ___

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials: _____

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials:

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a.bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

Initials: 

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include the corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials: 

-6(NY) (0005)            Page 12 of 17            Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup. .

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

Initials:



BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____ (Seal)
PHILIP S. LEONE                                    -Borrower

_____ (Seal)
MARIA G. LEONE                                    -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                  -Borrower

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____ (Seal)
PHILIP S. LEONE                                    -Borrower

_____

_____ (Seal)
MARIA G. LEONE                                    -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                   -Borrower

VMP-6(NY) (0005)                    Page 16 of 17                    Form 3033 1/01

**STATE OF NEW YORK,**                    Kings            County ss:

   On the 10th    day of    April, 2003            before me, the undersigned, a notary
public in and for said state, personally appeared    PHILIP S. LEONE and MARIA G. LEONE

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:
County:   Richmond
Block:    4583
Lot:      255

Initials: _____



Office of the
Richmond County Clerk
130  Stuyvesant  Place
Staten Island, NY 10301

Hon. Stephen J. Fiala, County Clerk

## Recording and Endorsement Cover Page

Document Type:          ASSIGNMENT OF MORTGAGE
Document Page Count:      2

| PRESENTER: | RETURN TO: |
|---|---|
| DEBBIE JOHNSTON | DEBBIE JOHNSTON |
| 1120 S. CAPITAL OF TEXAS HWY | 1120 S. CAPITAL OF TEXAS HWY |
| BLDG 3 STE 150 | BLDG 3 STE 150 |
| AUSTIN,TX 78746 | AUSTIN,TX 78746 |

PROPERTY DATA    # OF BLOCKS    1    # OF LOTS    1
Block    Lot              Unit
4583    255  Entire Lot

### PARTIES

ASSIGNOR INDEX                    ASSIGNEE INDEX
HSBC MORTGAGE CORPORATION (USA)   NATIONSTAR MORTGAGE LLC
                                  8950 CYPRESS WATERS BLVD

                                  COPPELL,TX 75019

"And Others"

### PAYMENT DETAIL

Make Checks Payable to:
=================================================================
Richmond County Clerk:                34.00 Recording Fees    **FEES PAID**
                                      --------------------
Total Payments For This Document:     34.00
=================================================================

EXAM ___AG___  DATE FEB 0 3 2017

RECORDED IN RICHMOND COUNTY

LAND DOC# 639746
25-ASSIGN,AGREE,REL

02/06/2017    10:57:46 A.M.
RECEIPT: 5487    FEE: $34.00
RICHMOND COUNTY CLERK

FEB  6 2017

COUNTY CLERK

Recording Requested By:
Mission Global LLC

When Recorded Return To:

 Recording Dept.
Mission Global LLC
1120 S. Capital of Texas Hwy
Bldg 3 Suite 150
Austin, TX  78746

## CORPORATE ASSIGNMENT OF MORTGAGE

**Richmond, New York**
**SELLER'S SERVICING #:**████████ **"LEONE" Investor's Loan #:**███████ **Old Servicing #:**█████

Date of Assignment: January 13th, 2017
Assignor: HSBC Mortgage Corporation (USA) at 2929 Walden Avenue, Depew, NY  14043
Assignee: Nationstar Mortgage LLC at 8950 CYPRESS WATERS BLVD, Coppell, TX  75019
Executed By: Philip S Leone and Maria G Leone and Santo Agosta  To: Mid-Island Equities Corp.
Dated: 10-13-1995 Recorded: 11-14-1995 as Instrument No. 29649, Book/Reel/Liber 6322, Page/Folio 220  In the
County of Richmond, State of New York.

-Assigned Wholly by Mid-Island Equities Corp. to Mid-Island Equities Corp. Dated: 10-13-1995 Recorded: 01-25-2002
as Instrument No. 5462, Book/Reel/Liber 2106, Page/Folio 174

-Assigned Wholly by HSBC Mortgage Corporation (USA), f/k/a Marine Midland Mortgage Corporation to HSBC Bank
USA, N.A. Dated: 09-24-2011 Recorded: 10-14-2011 as Instrument No. 512703267, Book/Reel/Liber *, Page/Folio *

-Assigned Wholly by Mortgage Electronic Registration Systems, Inc. as nominee for HSBC Bank, USA, N.A. to HSBC
Bank USA, N.A. Dated: 02-08-2012 Recorded: 02-14-2012 as Instrument No. 520393398, Book/Reel/Liber *,
Page/Folio *

Section/Block/Lot: 20/4583/255
Property Address: 40 Tanglewood Drive, Staten Island, NY  10308

 This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

 KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $144,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

 TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

HSBC Mortgage Corporation (USA)
On January 13th, 2017

By: _____
Debbie Johnston, Vice President and Assistant Secretary

STATE OF Texas
COUNTY OF TRAVIS

On the 13th day of January in the year 2017 before me, the undersigned, personally appeared Debbie Johnston, Vice
President and Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to
be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument,
the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such
individuals(s) made such appearance before the undersigned in the County of Travis, State of Texas.

WITNESS my hand and official seal,

_____
Allison Paige Smith
Notary Expires: 3/27/2017  #129365890
TRAVIS, Texas

ALLISON PAIGE SMITH
Notary Public, State of Texas
My Commission Expires
March 27, 2017

(This area for notarial seal)



Office of the
Richmond County Clerk
130  Stuyvesant  Place
Staten Island, NY 10301



Hon. Stephen J. Fiala, County Clerk

## Recording and Endorsement Cover Page

Document Type:       ASSIGNMENT OF MORTGAGE
Document Page Count:     4

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING, INC. | NATIONWIDE TITLE CLEARING, INC. |
| 2100 ALT 19 NORTH | 2100 ALT 19 NORTH |
| PALM HARBOR,FL 34683 | PALM HARBOR,FL 34683 |

PROPERTY DATA    # OF BLOCKS    1    # OF LOTS    1    # OF ADDL MTG    3
Block    Lot                Unit
4583    255   Entire Lot

### PARTIES

| ASSIGNOR INDEX | ASSIGNEE INDEX |
|---|---|
| NATIONSTAR MORTGAGE LLC | SELECT PORTFOLIO SERVICING INC |
| 8950 CYPRESS WATERS BLVD | 3217 S DECKER LAKE DRIVE |
| COPPELL,TX 75019 | SALT LAKE CITY,UT 84119 |

### PAYMENT DETAIL

Make Checks Payable to:
=============================================================================
Richmond County Clerk:                47.00 Recording Fee
                    ---------------------
Total Payments For This Document:     47.00
=============================================================================

**FEES PAID**

EXAM _AM_    DATE _9/11/19_

LAND DOC# 751710
25-ASSIGN,AGREE,REL

09/12/2019    09:51:19 A.M.
RECEIPT: 32511   FEE: $47.00
RICHMOND COUNTY CLERK

RECORDED IN RICHMOND COUNTY

SEP 1 2 2019

COUNTY CLERK

**ASSIGNMENT OF MORTGAGE**

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019**, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same may have been consolidated, extended or modified, including all mortgages that have been consolidated therewith, with all interest secured thereby, all liens, and any rights due or to become due thereon to **SELECT PORTFOLIO SERVICING, INC., WHOSE ADDRESS IS, 3217 SOUTH DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119-3284, ITS SUCCESSORS AND ASSIGNS**, (ASSIGNEE).

Said Mortgage dated 10/13/1995, made by **PHILIP S LEONE AND MARIA G LEONE AND SANTO AGOSTA** to **MID-ISLAND EQUITIES CORP.** in the principal sum of $144,000.00 and recorded on 11/14/1995 in **Reel 6322 and Page 220** in the office of the Registry of **RICHMOND** County, **NY**.

    SEE ATTACHED EXHIBIT A
Property Address: 40 TANGLEWOOD DRIVE
                STATEN ISLAND, NY 10308
See Exhibit attached for Assignments, Modifications etc.
This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated on _____ 8/28/2019 (MM/DD/YYYY).
**NATIONSTAR MORTGAGE LLC**


By: _____
    **Marissa Lopez**
    **VICE PRESIDENT**
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.


    Samuel Hurtado    Witness

STATE OF FLORIDA  COUNTY OF PINELLAS
Before me, on _____ 8/28/2019 (MM/DD/YYYY), the undersigned, personally appeared **Marissa Lopez** as VICE PRESIDENT for **NATIONSTAR MORTGAGE LLC**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Michelle Brown
Notary Public - State of FLORIDA
Commission expires: 10/13/2020

        MICHELLE BROWN
        Notary Public - State of Florida
        My Commission #GG 38514
        Expires October 13, 2020

**Document Prepared By:** Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
**When Recorded Return To:** Nationstar Mortgage LLC, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683
Property ID(S/B/L) Block: 4583 Lot: 255
NSBTA                    $47.00  DOCR
FRMNYRICHMOND1

Exhibit

Assignment: MID-ISLAND EQUITIES CORP. TO MID-ISLAND MORTGAGE CORP. DATED 10-17-2001.
REC: 01-25-2002 BK 12106 PG 174 INSTR# 5462

Mortgage: PHILIP S LEONE AND MARIA G LEONE TO MID-ISLAND MORTGAGE CORP. DATED
10-17-2001. REC: 01-25-2002 BK 12106 PG 126 INSTR# 5460, AMT: $32,043.75

CEMA: PHILIP S LEONE AND MARIA G LEONE TO MID-ISLAND MORTGAGE CORP. DATED
10-17-2001. REC: 01-25-2002 BK 12106 PG 145 INSTR# 5461, COMBINED AMOUNT: $168,000.00

Assignment: MID-ISLAND MORTGAGE CORP. TO HSBC MORTGAGE CORPORATION (USA) DATED
04-10-2003. REC: 07-17-2003 BK 15459 PG 174 INSTR# 56462

Mortgage: PHILIP S LEONE AND MARIA G LEONE TO HSBC MORTGAGE CORPORATION (USA)
DATED 04-10-2003. REC: 07-17-2003 BK 15459 PG 178 INSTR# 56463, AMT: $42,458.08

CEMA: PHILIP S LEONE AND MARIA G LEONE TO HSBC MORTGAGE CORPORATION (USA) DATED
04-10-2003. REC: 07-17-2003 BK 15459 PG 198 INSTR# 56464, COMBINED AMOUNT: $208,100.00

Mortgage: PHILIP S LEONE AND MARIA G LEONE AND SANTO AGOSTA TO HSBC MORTGAGE
CORPORATION (USA) DATED 03-20-2010. EFFECTIVE DATE 03-20-2010. REC: 08-20-2010 INSTR#
349194 THIS MOD INCREASED THE MTG BY: $28845.76, TO FORM A SINGLE LIEN OF $221865.83

Assignment: HSBC MORTGAGE CORPORATION (USA) TO NATIONSTAR MORTGAGE LLC DATED
01-13-2017. REC: 02-06-2017 INSTR# 639746

# Exhibit A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Richmond, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southwesterly side of Tanglewood Drive (64 feet wide) distant 200.00 feet easterly from the corner formed by the intersection of the southwesterly side of Tanglewood Drive and the easterly side of Arthur Kill Road;

RUNNING THENCE south 42 degrees 17 minutes 29 seconds west 100.00 feet to a point;

THENCE south 47 degrees 42 minutes 31 seconds east 25.00 feet to a point;

THENCE north 42 degrees 17 minutes 20 seconds east and part of the distance through a party wall, 100 feet to the said southwesterly side of Tanglewood Drive; and

THENCE along the said southwesterly side of Tanglewood Drive north 47 degrees 42 minutes 31 seconds west 25.00 feet to the point or place of BEGINNING.

**Copy**

**PREPARED BY:**
Alan Koeppel
HSBC Mortgage Corporation
2929 Walden Ave
Depew NY 14043
716-651-6887

*Record :*
*Return To:* Boston National Title
Rachel Zauber
129 W. Trade Street, 9th Floor
Charlotte, NC 28202

_____

[Space Above This Line For Recording Data]

| | |
|---|---|
| Original Recorded Date: JULY 17, 2003 | Freddie Mac Loan No. |
| Original Principal Amount: $   208,100.00 | Loan No. |

## LOAN MODIFICATION AGREEMENT
### (To a Fixed Interest Rate)

**IF THE LOAN MODIFICATION AGREEMENT MUST BE RECORDED, TWO ORIGINAL LOAN MODIFICATION AGREEMENTS MUST BE EXECUTED BY THE BORROWER: ONE ORIGINAL IS TO BE FILED WITH THE NOTE AND ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED**

This Loan Modification Agreement (the "Agreement"), made and effective this   20TH   day of MARCH, 2010          , between
HSBC MORTGAGE CORPORATION (USA)

("Lender")

and  PHILIP S LEONE AND MARIA G LEONE AND
SANTO AGOSTA *residing in 40 Tanglewood Dr., Staten Island, NY 10308*

("Borrower"),
modifies and amends certain terms of Borrower's indebtedness evidenced by (1) the Note (the "Note") to Lender dated **APRIL 10, 2003**          , in the original principal sum of U.S. $     208,100.00     and secured by (2) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and Rider(s), if any, dated the same date as the Note and recorded in **Book or Liber 15459**, at page(s) 198, **Instrument No. N/A** of the Official                Records of  **Richmond COUNTY, NEW YORK**                . The
[Name of Records]                        [County and State, or other jurisdiction]
Security Instrument covers the real and personal property described in the Security Instrument and defined

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) –Single Family–Freddie Mac UNIFORM INSTRUMENT          Form 5161
First American Loan Production Services                                                                 3/04    (page 1 of 5)
First American Real Estate Solutions LLC                                                                        NEW YORK
FALPS# 1-NYFR5161 Rev. 07-01-08

Copy

as the "Property", located at:

40 Tanglewood Drive, Staten Island, NEW YORK 10308

[Property Address]

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, Lender and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. Current Balance. As of **MARCH 17, 2010**          , the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $      **221,865.83**     .

2. Interest Rate. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of   **5.625**   %, beginning **MARCH 1, 2010**          , both before and after any default described in the Note. The yearly rate of   **5.625**   % will remain in effect until principal and interest is paid in full.

3. Monthly Payments and Maturity Date  Borrower promises to make monthly payments of principal and interest of U.S. $      **1,163.25**     , beginning on the   **1ST**   day of **APRIL, 2010**          , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **MARCH 01, 2050**          , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification Agreement, the Borrower will pay these amounts in full on the Maturity Date.

4. Place of Payment.   Borrower   must   make   the   monthly   payments   at **2929 WALDEN AVENUE DEPEW, NEW YORK 14043** or such other place as Lender may require.

5. Partial Payments. Borrower may make a full prepayment or partial prepayments without paying any prepayment charge. Lender will use the prepayments to reduce the amount of principal that Borrower owes under the Note. However, Lender may apply the

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) --Single Family--Freddie Mac UNIFORM INSTRUMENT          Form 5161
First American Loan Production Services                                                                  3/04      (page 2 of 5)
First American Real Estate Solutions LLC                                                                          NEW YORK
FALPS# NYFR5161-2 Rev. 05-21-08

**Copy**

Prepayment to the accrued and unpaid interest on the prepayment amount before applying the prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or the amount of the monthly payments unless Lender agrees in writing to those changes.

6    Property Transfer.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand of Borrower.

7.    Compliance with Covenants   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

8.    This Agreement modifies an obligation secured by an existing security instrument recorded in Richmond                County, NEW YORK            , upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $   193,020.07 . The principal balance secured by the existing security instrument as a result of this Agreement is $    221,865.83    , which amount represents the excess of the unpaid principal balance of this original obligation.
*New money secured by this instrument is $28,845.76*

(Acknowledgments on following page)

MULTISTATE LOAN MODIFICATION AGREEMENT (for a Fixed Interest rate) –Single Family–Freddie Mac UNIFORM INSTRUMENT          Form 5161
First American Loan Production Services                                                          3/04      (page 3 of 5)
First American Real Estate Solutions LLC                                                               NEW YORK
FALPS# NYFB3161-3 Rev. 05-21-08

**Copy**

Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

In Witness Whereof, Lender and Borrower have executed this Agreement.

**HSBC MORTGAGE CORPORATION (USA)**
MESUD AVDAGIC
Assistant Vice President
DATE: 4-6-10

Name: _____ - Lender
Its:

PHILIP S LEONE _____ - Borrower

MARIA G LEONE      4/2/10 _____ - Borrower

SANTO AGOSTA _____ - Borrower

_____ - Borrower

_____ - Borrower

_____ - Borrower

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) –Single Family–Freddie Mac UNIFORM INSTRUMENT          Form 5161
First American Loan Production Services                                                3/04     (page 4 of 5)
First American Real Estate Solutions LLC                                                     NEW YORK
FALPS# NYFR5161-4 Rev. 05-21-08

**Copy**

[Space Below This Line for Acknowledgments]

## BORROWER ACKNOWLEDGMENT

State of New York
County of ___Richmond___

On ___4/2/10___ before me, ___Michael Spera___
personally appeared _____
**PHILIP S LEONE AND MARIA G LEONE AND**
**SANTO AGOSTA** _____
_____
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___(signature)___

Printed Name ___Michael Spera___

**MICHAEL SPERA**                    (Seal)
Notary Public, State Of New York
No. 01SP6009414
Qualified In Richmond County
Commission Expires June 29, 2010

## LENDER ACKNOWLEDGMENT

State of ___NY___
County of ___Erie___

On ___4/6/10___ before me, ___Roy I. Henseler___
personally appeared ___Mesud Avdagic___, the ___AVP___
of ___HSBC Mortgage Corp (USA)___
_____
a ___representative___, on behalf of said entity,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___(signature)___

Printed Name ___Roy I. Henseler___              (Seal)

ROY I. HENSELER
No. 01HE5024206
Notary Public, State of New York
Qualified In Erie County
My Commission Expires Mar. 7, 2014

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) –Single Family–Freddie Mac UNIFORM INSTRUMENT       Form 5161
First American Loan Production Services                                                                    3/04        (page 5 of 5)
First American Real Estate Solutions LLC                                                                              NEW YORK
FALPS# NYFR5161-5 Rev. 05-21-08

Copy

## EXHIBIT A

**BORROWER(S):   PHILIP S LEONE AND MARIA G LEONE AND**
**                    SANTO AGOSTA**

**LOAN NUMBER:** ▮▮▮▮▮▮▮

**LEGAL DESCRIPTION:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING
IN THE BOROUGH AND COUNTY OF RICHMOND, CITY AND STATE OF NEW YORK,
BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE
SOUTHWESTERLY SIDE OF TANGLEWOOD DRIVE (64 FEET WIDE) DISTANT 260.00
FEET EASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE
SOUTHWESTERLY SIDE OF TANGLEWOOD DRIVE AND EASTERLY SIDE OF ARTHUR KILL
ROAD; RUNNING THENCE SOUTH 42 DEGREES 17 MINUTES 29 SECONDS WEST 100.00
FEET TO A POINT; THENCE SOUTH 47 DEGREES 42 MINUTES 31 SECONDS EAST 25.00
FEET TO A POINT; THENCE NORTH 42 DEGREES 17 MINUTES 29 SECONDS EAST AND
PART OF THE DISTANCE THROUGH A PARTY WALL, 100 FEET TO THE SAID
SOUTHWESTERLY SIDE OF TANGLEWOOD DRIVE; AND THENCE ALONG THE SAID
SOUTHWESTERLY SIDE OF TANGLEWOOD DRIVE NORTH 47 DEGREES 42 MINUTES 31
SECONDS WEST 25.00 FEET TO THE POINT OR PLACE OF BEGINNING.

ALSO KNOWN AS:  40 Tanglewood Drive, Staten Island, NEW YORK 10308

FAND# EXHIBIT.A  Rev. 07-03-07

**Copy**

**AFFIDAVIT UNDER SECTION 255 TAX LAW**
**EXTENSION-MODIFICATION**

STATE OF NORTH CAROLINA}
                           ss.:
COUNTY OF MECKLENBURG}

       Brian McCully, being duly sworn, deposes and says:

- That he is a representative of HSBC Mortgage Corporation (USA), the owner and holder of the hereinafter described mortgage, and is familiar with the facts and circumstances set forth herein. That said mortgage encumbers the property known as and by 40 Tanglewood Dr., Staten Island, New York 10308 (the "Premises).

- That a certain Mortgage dated July 17, 2003, made by Philip S. Leone and Maria G. Leone and Santo Agosta, as mortgagors to HSBC Mortgage Corporation (USA), Mortgage, securing the original principal amount of $208,100.00 which was recorded in the Office of the Richmond County Clerk, on April 10, 2003, under Book or Liber 15459, at page(s) 198,upon which mortgage tax was duly paid.

- That on March 20, 2010, the record owner of the said Premises, Philip S. Leone and Maria G. Leone and Santo Agosta and HSBC Mortgage Corporation (USA) entered into a Loan Modification Agreement, which Agreement is offered herewith for recording.

- That the instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:
    - Unpaid principal balance      $ 193.020.07
    - New unpaid principal balance  $ 221,865.83
    - B minus a equals            $ 28,845.76
    - Additional obligation secured by mortgage as modified
  Additional mortgage recording tax of $548.10 is therefore being paid on the Modification on the sum set forth in 4c.

Wherefore, deponent respectfully requests that such Home Affordable Modification Agreement tendered herewith for recording is declared exempt from taxation pursuant to Section 255 of the Tax Law of the State of New York.

                                           _____
                                           Brian McCully

Sworn to me this
16th day of August, 2010

_Marlene Hermann_

MARLENE HERMANN
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires February 4, 2015

**Copy**



Office of the
Richmond County Clerk
130 Stuyvesant Place
Staten Island, NY 10301

**Hon. Stephen J. Fiala, County Clerk**

| Recording and Endorsement Cover Page | | |
|---|---|---|
| Document Id: | 000000000359121 | Document Date: 03/20/2010 Preparation Date: 08/16/2010 |
| Document Type: | MORTGAGE & MODIFICATION | |
| Document Page Count: | 00008 | |

| PRESENTER: | RETURN TO: |
|---|---|
| BOSTON NATIONAL TITLE AGENCY, LLC | BOSTON NATIONAL TITLE AGENCY, LLC |
| 129 W. TRADE STREET | 129 W. TRADE STREET |
| 9TH FLOOR | 9TH FLOOR |
| CHARLOTTE NY, 28202 | CHARLOTTE NY, 28202 |

PROPERTY DATA   # OF BLOCKS   1   # OF LOTS   1

Block   Lot                 Unit    Address
4583   255   Entire Lot              40 TANGLEWOOD DR ,
Property Type:   Dwelling Only - 1 Family

PARTIES

| MORTGAGOR INDEX | MORTGAGEE INDEX |
|---|---|
| PHILIP S LEONE | HSBC MORTGAGE CORPORATION |
| 40 TANGLEWOOD DR. | 2929 WALDEN AVE |
| | |
| STATEN ISLAND NY, 10308 | STATEN ISLAND NY, 14043 |
| | |
| "And Others" | |

Mortgage Cons:          $28,245.76
                            PAYMENT DETAIL
Make Checks Payable to:
========================================================================
Richmond County Clerk:                   54.00 Recording Fees
Richmond County Clerk:                  548.10 Mortgage Tax
                        --------------------
Total Payments For This Document:        602.10
========================================================================

**FEES PAID**

EXAM _AR_ DATE 8/19/19

LAND DOC# 349194
24-MORTGAGES
MTAX: DB 4308   $548.10
08/20/2010   11:39:29 A.M.
RECEIPT# 38489   FEE: $54.00
RICHMOND COUNTY CLERK

RECORDED IN RICHMOND COUNTY

AUG 2 0 2010

COUNTY CLERK

**Exhibit "B"**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

IN RE

    MARIA LEONE AND PHILIP LEONE        CHAPTER 7

                                     CASE NO. 1-17-41358-nhl

              DEBTORS

                                     JUDGE: Nancy Hershey Lord

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:  40 Tanglewood Drive, Staten Island, NY 10308

2. ORIGINAL LENDER NAME:  HSBC Mortgage Corporation (USA)

3. MORTGAGE DATE:  04/10/2003

4. POST-PETITION PAYMENT ADDRESS:
   Select Portfolio Servicing, Inc., P.O. Box 65450, Salt Lake City, UT 84165-0450

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF JANUARY 13, 2020: $216,430.76
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $465,767.00

7. SOURCE OF ESTIMATED MARKET VALUE:  Debtor's Schedule A/B

19-083224

## STATUS OF THE DEBT AS OF THE PAYOFF DATE

8.  DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PAYOFF DATE:

   A.  TOTAL:              $_____216,430.76

   B.  PRINCIPAL:           $_____215,611.15

   C.  INTEREST:            $_____1,537.98

   D.  ESCROW (TAXES AND INSURANCE):    $_____0.00

   E.  FORCED PLACED INSURANCE EXPENDED BY MOVANT: $_____0.00

   F.  PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): $_____0.00

   G.  PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): $_____0.00

9.  CONTRACT INTEREST RATE: <u>4.625%</u>

 *(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM.  STATE THE EXHIBIT NUMBER HERE:* N/A.)

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

<u>Property Preservation Fees:  $75.00</u>
<u>Suspense: ($793.37)</u>
*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:  N/A.)*

## AMOUNT OF DEFAULTED AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: <u>12/30/2019</u>

12. NUMBER OF PAYMENTS DUE TO MOTION FILING DATE: <u>2</u> PAYMENTS.

19-083224

13. PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 12/1/19-1/1/20* | $1,205.16 per month | $      0.00 | $         0.00 | $      0.00 | $       0.00 | $         0.00 |
| TOTALS | $  2,410.32 | $      0.00 | $         0.00 | $      0.00 | $       0.00 | $         0.00 |

*Since the drafting of the Motion the February 1, 2020 payment has become due.

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A.  TOTAL:        $_____ 0.00

    B.  ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION:        $_____ 0.00

    C.  FILING FEE IN CONNECTION WITH THIS MOTION:        $_____ 0.00

    D.  OTHER POST-PETITION ATTORNEYS' FEES:        $_____ 0.00

    E.  POST-PETITION INSPECTION FEES:        $_____ 0.00

    F.  POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:        $_____ 0.00

    G.  FORCED PLACED INSURANCE EXPENDED BY MOVANT:        $_____ 0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:        $_____ 793.37

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: N/A

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: N/A.)*

19-083224

### REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)    COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT N/A.)

19-083224

**DECLARATION AS TO BUSINESS RECORDS**

I, **Reid Vaenuku**, THE **Document Control Officer** OF **Select Portfolio Servicing, Inc.**, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT Salt Lake City
ON THIS 25 DAY OF March, 2020

| | |
|---|---|
| NAME: | **Reid Vaenuku** |
| TITLE: | **Document Control Officer** |
| MOVANT: | Select Portfolio Servicing, Inc. |
| STREET ADDRESS: | 3217 S. Decker Lake Dr. |
| CITY, STATE AND ZIP CODE: | Salt Lake City, UT 84119 |

**DECLARATION**

I, **Reid Vaenuku**, THE **Document Control Officer** OF **Select Portfolio Servicing, Inc.**, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT Salt Lake City
ON THIS 25 DAY OF March, 2020

| | |
|---|---|
| NAME: | **Reid Vaenuku** |
| TITLE: | **Document Control Officer** |
| MOVANT: | Select Portfolio Servicing, Inc. |
| STREET ADDRESS: | 3217 S. Decker Lake Dr. |
| CITY, STATE AND ZIP CODE: | Salt Lake City, UT 84119 |

19-083224

**Exhibit "C"**

Case 1-17-41358-nhl   Doc 21   Filed 03/28/20   Entered 03/28/20 15:00:09

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Maria** | | **Leone** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Philip** | | **Leone** |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **EASTERN DISTRICT OF NEW YORK**

Case number
(if known) _____

☐ Check if this is an
amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items.  List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible.  If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write your name and case number (if known).  Answer every question.

---

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.    **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No.  Go to Part 2.
   ☑ Yes.  Where is the property?

| | | |
|---|---|---|
| 1.1. | **What is the property?** Check all that apply. | Do not deduct secured claims or exemptions.  Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |

Street address, if available, or other description

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| $465,767.00 | $465,767.00 |

**40 tanglewood drive s**    NY   **10308**
City                           State   ZIP Code

County

**40 tanglewood drive s.i. n.y 10308
3 bedroom 1 1/2 bathrooms spilt level
semi detached**

**Who has an interest in the property?**
Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**SINGLE FAMILY HOME**

☑ Check if this is community property
   (see instructions)

Other information you wish to add about this item, such as local
property identification number: _____

2.    **Add the dollar value of the portion you own for all of your entries from Part 1, including any
   entries for pages you have attached for Part 1.  Write that number here** ........................................➔

| $465,767.00 |
|---|

---

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?**  Include any vehicles you own that someone else drives.  If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.    **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☑ No
   ☐ Yes

Debtor 1    **Maria Leone**

Debtor 2    **Philip Leone**                                              Case number (if known) _____

---

4.  **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
    *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

    ☒ No
    ☐ Yes

5.  Add the dollar value of the portion you own for all of your entries from Part 2, including any
    entries for pages you have attached for Part 2. Write that number here.......................................➔    | $0.00 |

## Part 3:    Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6.  **Household goods and furnishings**
    *Examples:* Major appliances, furniture, linens, china, kitchenware

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

7.  **Electronics**
    *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners;
    music collections; electronic devices including cell phones, cameras, media players, games

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

8.  **Collectibles of value**
    *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects;
    stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis;
    canoes and kayaks; carpentry tools; musical instruments

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems,
    gold, silver

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses

    ☒ No
    ☐ Yes.  Describe.....                                                      _____

Debtor 1    **Maria Leone**

Debtor 2    **Philip Leone**                                                    Case number (if known) _____

14. **Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific
information............                                                                                   _____

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write the number here**................................................................. ➜ | **$0.00** |

<div style="background:black;color:white">**Part 4:**</div>    **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?                    Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

16. **Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes.................................................................................... Cash: .......................... | **$100.00** |

17. **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes...........................    Institution name:

17.1.    Checking account:    **Capital One (Checking ▮▮▮▮▮▮)**                    | **$588.00** |

18. **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes...........................    Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes. Give specific
information about
them..........................    Name of entity:                    % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific
information about
them..........................    Issuer name:

21. **Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each
account separately.    Type of account:    Institution name:

Official Form 106A/B                    **Schedule A/B: Property**                    page 3

Debtor 1     **Maria Leone**

Debtor 2     **Philip Leone** _____     Case number (if known) _____

---

**22.  Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☑ No
☐ Yes............................     Institution name or individual:

**23.  Annuities**   (A contract for a specific periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes............................     Issuer name and description:

**24.  Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes............................     Institution name and description.  Separately file the records of any interests.  11 U.S.C. § 521(c)

**25.  Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or
powers exercisable for your benefit**

☑ No
☐ Yes.  Give specific
   information about them                                                                                _____

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property;**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes.  Give specific
   information about them                                                                                _____

**27.  Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
☐ Yes.  Give specific
   information about them                                                                                _____

**Money or property owed to you?**                          **Current value of the
                                                            portion you own?**
                                                            Do not deduct secured
                                                            claims or exemptions.

**28.  Tax refunds owed to you**

☐ No
☑ Yes.  Give specific information     **Federal: Tax Refund from $3,958.00 due 3/1/2017.  Amt:**     Federal: _____ **$3,958.00**
   about them, including whether      **$3,958.00**
   you already filed the returns                                                          State: _____ **$0.00**
   and the tax years.....................                                                 Local: _____ **$0.00**

**29.  Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
☐ Yes.  Give specific information                        Alimony: _____

                                                         Maintenance: _____

                                                         Support: _____

                                                         Divorce settlement: _____

                                                         Property settlement: _____

**30.  Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers'
compensation, Social Security benefits; unpaid loans you made to someone else

☑ No
☐ Yes.  Give specific information                                                        _____

---

Official Form 106A/B                          **Schedule A/B: Property**                          page 4

Debtor 1    **Maria Leone**

Debtor 2    **Philip Leone**                                    Case number (if known) _____

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

    ☐ No

    ☑ Yes.  Name the insurance
    company of each policy
    and list its value.................

    | Company name: | Beneficiary: | Surrender or refund value: |
    |---|---|---|
    | **New York life** | | |
    | **Type: whole/universal** | | |
    | **Insured: husband** | **Maria Leone** | **$0.00** |

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently
    entitled to receive property because someone has died

    ☑ No

    ☐ Yes.  Give specific information                                    _____

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

    ☑ No

    ☐ Yes.  Describe each claim........                                    _____

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and
    rights to set off claims**

    ☑ No

    ☐ Yes.  Describe each claim........                                    _____

35. **Any financial assets you did not already list**

    ☑ No

    ☐ Yes.  Give specific information                                    _____

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have
    attached for Part 4.  Write that number here........................................................................** ➔    **$4,646.00**

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In.  List any real estate in Part 1.**

---

37. **Do you own or have any legal or equitable interest in any business-related property?**

    ☑ No.  Go to Part 6.

    ☐ Yes.  Go to line 38.

                                                                    **Current value of the
                                                                    portion you own?**
                                                                    Do not deduct secured
                                                                    claims or exemptions.

38. **Accounts receivable or commissions you already earned**

    ☑ No

    ☐ Yes.  Describe..                                    _____

39. **Office equipment, furnishings, and supplies**
    *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones,
                desks, chairs, electronic devices

    ☑ No

    ☐ Yes.  Describe..                                    _____

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

    ☑ No

    ☐ Yes.  Describe..                                    _____

Debtor 1    **Maria Leone**
Debtor 2    **Philip Leone**                                             Case number (if known) _____

**41. Inventory**

☑ No
☐ Yes. Describe..                                                                                    _____

**42. Interests in partnerships or joint ventures**

☑ No
☐ Yes. Describe..... Name of entity:                              % of ownership:

**43. Customer lists, mailing lists, or other compilations**

☑ No
☐ Yes. **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?
    ☐ No
    ☐ Yes. Describe.....                                                                          _____

**44. Any business-related property you did not already list**

☑ No
☐ Yes. Give specific information.

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have
attached for Part 5. Write that number here.......................................................................➜ | $0.00 |

---

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
| | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes. Go to line 47.

                                                            **Current value of the
portion you own?**
Do not deduct secured
claims or exemptions.

**47. Farm animals**
*Examples:* Livestock, poultry, farm-raised fish

☑ No
☐ Yes....                                                                                             _____

**48. Crops--either growing or harvested**

☑ No
☐ Yes. Give specific
information................                                                                             _____

**49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☑ No
☐ Yes....                                                                                             _____

**50. Farm and fishing supplies, chemicals, and feed**

☑ No
☐ Yes....                                                                                             _____

**51. Any farm- and commercial fishing-related property you did not already list**

☑ No
☐ Yes. Give specific
information................                                                                             _____

**52.** Add the dollar value of all of your entries from Part 6, including any entries for pages you have
attached for Part 6. Write that number here...........................................................➜ | $0.00 |

Debtor 1   **Maria Leone**
Debtor 2   **Philip Leone** _____   Case number (if known) _____

---

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

**53.  Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership

   ☑ No
   ☐ Yes.  Give specific information.

**54.  Add the dollar value of all of your entries from Part 7.  Write that number here.............................**  ➔   $0.00

---

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

**55.  Part 1: Total real estate, line 2**................................................................................................  ➔   $465,767.00

**56.  Part 2: Total vehicles, line 5**   $0.00

**57.  Part 3: Total personal and household items, line 15**   $0.00

**58.  Part 4: Total financial assets, line 36**   $4,646.00

**59.  Part 5: Total business-related property, line 45**   $0.00

**60.  Part 6: Total farm- and fishing-related property, line 52**   $0.00

**61.  Part 7: Total other property not listed, line 54**   +   $0.00

**62.  Total personal property.**   Add lines 56 through 61...................   $4,646.00   | Copy personal property total  ➔   +   $4,646.00

**63.  Total of all property on Schedule A/B.**   Add line 55 + line 62................................................................   $470,413.00